UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| BILLY ZUMSTEIN,<br><br>   Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>   Respondent. | No. 1:07-CR-63/1:08-CV-281<br>Chief Judge Curtis L. Collier |

## **MEMORANDUM**

*Pro se* petitioner Billy Zumstein ("Petitioner") filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Court File No. 37). Although he initially indicated he may wish to withdraw this petition, he never affirmatively moved to dismiss the action as directed by the Court in its order dated March 26, 2009 (Court File No. 41). The Court therefore construes his failure to dismiss his complaint as expressing a desire to proceed with his motion.[1]

This Court sentenced Petitioner to 160 months in prison on December 6, 2007, after he pleaded guilty to conspiracy to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A). Judgment was entered on December 17, 2007, and Petitioner timely filed his § 2255 motion on December 4, 2008 (Court File No. 37). Petitioner claims ineffective assistance of counsel, citing his attorney's failure to dispute an enhancement for a firearm at sentencing. The Court finds the materials thus submitted, together with the record of the underlying criminal case (1:07-CR-63), conclusively show Petitioner is not entitled to relief on

---

[1] In its previous order, the Court clearly instructed the petitioner to file a motion to dismiss his complaint within thirty days and cautioned the petitioner that the dismissal would be with prejudice.

the claims asserted in his petition. Accordingly, the Court will decide this matter without an evidentiary hearing, *see United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993), and will **DENY** Petitioner's motion for the reasons stated herein.

I.   **RELEVANT FACTS AND PROCEDURAL HISTORY**

The following underlying facts supporting Petitioner's guilty plea are obtained from the facts included in Petitioner's plea agreement (Court File No. 26).

a)   On November 16, 2006, detectives of Bradley County Sheriff's Office ("BCSO") executed a "buy bust" operation at the Walgreen's on Ocoee Street in Cleveland using a confidential informant ("CI"). BCSO arrested co-defendant Westfall in the CI's car with a bag of methamphetamine (lab tested-approximately seventeen (17) grams).

b)   Co-defendant Westfall waived *Miranda* and said that he and [Petitioner] had gotten that meth to sell earlier that day.

c)   On February 28, 2007, Co-defendant Westfall met with BCSO Detective Joe Renner ("Renner"), was advised of Miranda which he waived, and gave a statement. He did sign a rights waiver form. He said that he and [Petitioner] were partners and that starting in August of 2006 they sold 1.5 ounces of Meth a week. Starting in mid-September of 2006 through January of 2007 they were selling one (1) ounce of Meth a day. He stated that on one occasion that [Petitioner] bought a pound of Meth. He said they paid $1450 for an ounce and $17,000 for the pound of Meth.

d)   On March 31, 2007, McMinn County Sheriff's Office Detective Guy McGill ("McGill") interviewed [Petitioner] after [Petitioner] waived his *Miranda* rights. [Petitioner] said that in 2006 he bought his first eight ("8") ball of "ICE" methamphetamine. He said that within approximately two (2) months he bought his first pound of ICE methamphetamine for $17,900. He said he was getting one (1) pound of ICE methamphetamine per week (from "Michael" in Cohutta, GA) for approximately three (3) months. In July of 2006 he was getting two (2) ounces of ICE methamphetamine three (3) times a week (from "Pops") for $2400-$2800. He was also getting .5 ounces to one (1) ounce of methamphetamine four (4) times a week (from Michael). Beginning in March of 2007 until March 29, 2007, the defendant said that he [was] getting five (5) ounces of ICE methamphetamine every day (from Julio and Frita).

e) On May 3, 2007, BCSO arrested and questioned co-defendant Westfall about some burglaries. Maskew re-interviewed him about his meth involvement and co-defendant Westfall was consistent with his earlier statement to BCSO about amounts and that he and [Petitioner] were partners in the methamphetamine distribution business. This statement was after *Miranda* and is on video-tape.

f) As part of this plea agreement [Petitioner] admits that he conspired with co-defendant Westfall and others to distribute more than five hundred (500) grams of methamphetamine.

(Court File No. 26).

The following additional facts were included in the presentence report ("PSR"):

On March 30, 2007, a Meigs County Sheriff's deputy responded to a residence on an Aggravated Burglary call. A homeowner had returned to his house to find someone in his house. The homeowner apparently scared the burglar who got into a 1987 Ford Ranger and fled the scene. The deputy stopped the Ford Ranger shortly after receiving the call. [Petitioner] was the driver of the truck. He was arrested and charged with Aggravated Burglary, Theft and Vandalism. After waiver of his *Miranda* rights, the defendant told the deputy that there was a gun in the vehicle. The deputies had already inventoried the vehicle and had not found the gun. The defendant showed the deputies where the gun was by popping the hood [e]nd of the truck and pointing to an Intratech 9mm Tech 9 semi-automatic pistol.
. . .

On April 25, 2007, [Petitioner] was interviewed by ATF Special Agent Gillette. In this interview, [Petitioner] admitted that he received the Intratech 9mm Tech 9 semi-automatic pistol as payment for the methamphetamine. A Bradley County Sheriff's detective interviewed the person that [Petitioner] stated gave him the firearm; this person confirmed that he did trade the firearm to [Petitioner] for methamphetamine.

(PSR ¶¶ 13, 15).

On May 8, 2007, Petitioner and codefendant Shea Westfall were indicted in a six-count indictment (Court File No. 1). Petitioner was charged with two counts of conspiracy to distribute methamphetamine, possession of a firearm by a convicted felon, and possession of equipment, chemicals, products, and materials for the manufacture of methamphetamine. On August 23, 2007, he pleaded guilty to Count One, conspiracy to distribute 500 grams or more of a mixture or

3

substance containing methamphetamine. Neither party filed objections to the presentence report and Petitioner did not directly appeal his sentence.

Petitioner now brings this motion under § 2255 claiming he was denied his constitutional right to effective assistance of counsel and the application of the firearm enhancement under § 2D1.1(b) constituted a breach of the plea agreement.

## II.  STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court which imposed the sentence to vacate, correct, or set aside that sentence, on the grounds:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States*, 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000). It is a "well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).

Where a constitutional error is alleged, in order to obtain relief under § 2255, the record must reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging a

4

non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

### III. DISCUSSION

Petitioner claims his counsel was ineffective based on her failure to object to the two-point enhancement for a firearm. Petitioner argues because his charge of felon-in-possession was dismissed by the government, he should not have received the two-level enhancement pursuant to § 2D1.1(b)(1). He also claims the application of this enhancement constituted a breach of the plea agreement. Neither of Petitioner's claims warrants relief from the judgment previously imposed by the Court.

#### A. Ineffective Assistance of Counsel

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious

> that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no

> reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

Petitioner cannot establish either prong under *Strickland*. Petitioner does not contend the facts contained in the PSR regarding his receiving a firearm in exchange for methamphetamine are inaccurate. He is not asserting that he did not possess a firearm. Rather, his argument the enhancement is inapplicable stems from his misunderstanding that because the government agreed to dismiss the 18 U.S.C. § 922(g), the Court was precluded from considering the firearm as part of relevant conduct. This is an incorrect interpretation of the law. *See, e.g.*, *United States v. Blankenship*, 954 F.2d 1224, 1227 (6th Cir. 1992))(upholding enhancement under §2D1.1(b)(1) even though a firearm charge under 18 U.S.C. § 924(c)(1) had been dismissed pursuant to a plea agreement) *accord Carter v. United States*, 999 F.2d 539, 1993 WL 243762 at * 2 (Table) (6th Cir. July 6, 1993); *see also United States v. Smith*, 887 F.2d 104, 107 (6th Cir. 1989)(holding drug quantities charged in a count dismissed pursuant to a plea agreement should be considered in determining the base offense level if those quantities were part of the same course of conduct). It was therefore not unreasonable for his counsel to refrain from making a frivolous argument.

Even if Petitioner's counsel had objected to the firearm enhancement, the Court would have overruled the objection and considered his use of a firearm as relevant conduct to the offense in calculating the proper guideline range. *See* USSG § 1B1 (defining relevant conduct to include "all

7

acts and omissions committed, aided, abetted, counseled, commanded, induced, procured or willfully caused by the defendant"). Accordingly, the petitioner cannot establish any prejudice from his counsel's failure to raise a frivolous argument.

Petitioner has not demonstrated how his counsel's failure to challenge an enhancement pursuant to §2D1.1(b)(1), which was without merit, prejudiced the outcome of his case and this claim cannot support relief under § 2255.

### B. Breach of the Plea Agreement

The Government's consideration of the presence of a firearm despite dismissing Petitioner's charge of violating 18 U.S.C. § 922(g) does not constitute a breach of the plea agreement. Plea agreements are contractual in nature and interpreted and enforced using traditional principles of contract law. *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002). Any ambiguities in a plea agreement are "construed against the government . . . because the government can take steps in drafting a plea agreement to avoid imprecision." *United States v. Bowman*, --- F.3d ---, 2011 WL 350296 at *3 (6th Cir. 2011) (citing *United States v. Fitch*, 282 F.3d 364, 367-68 (6th Cir. 2002)).

Here, there is no express agreement to ignore the presence of a firearm and the section prior to Petitioner's stipulated facts clearly indicates:

> These are the facts submitted for [Petitioner]'s guilty plea. They do not necessarily constitute all the facts in the case. Other facts may be relevant to sentencing. Both [Petitioner] and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

(Court File No. 26, p. 3). In addition, the plea agreement contained an integration clause expressly limiting the full and complete agreement and understanding between the parties to the contents of the plea agreement (*id.* at 9). "An integration clause normally prevents a criminal defendant, who

has entered into a plea agreement, from asserting that the government made oral promises to him not contained in the plea agreement itself." *United States v. Hunt*, 205 F.3d 931, 935 (6th Cir.2000). Petitioner claims there was a breach, but has not pointed to language to suggest the terms of the agreement foreclosed the possibility of an enhancement for a firearm, which he admitted to receiving in exchange for methamphetamine.

Accordingly, Petitioner's breach of plea agreement fails to provide grounds for relief.

## IV. CONCLUSION

None of the grounds asserted by the Petitioner support a finding his counsel's assistance was ineffective. For the reasons stated above, Petitioner's sentencing was not in violation of the Constitution or laws of the United States, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED** (Court File No. 37).

In addition to the above, this Court **CERTIFIES** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal is **DENIED**. Fed. R. App. P. 24. Petitioner has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253; Fed. R. App. P. 22(b), or that reasonable jurists would disagree on the resolution of this matter, thus a certificate of appealability **SHALL NOT ISSUE**. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

9